**NON-PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2049
_____

RYAN POWNALL,
                  Appellant

v.

LAWRENCE S. KRASNER, IN HIS INDIVIDUAL CAPACITY;
TRACY TRIPP, IN HER INDIVIDUAL CAPACITY;
THE CITY OF PHILADELPHIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania,
(Case No. 2:22-cv-04191)
District Judge: Hon. Gerald A. McHugh

_____

Submitted Under Third Circuit L.A.R. 34.1(a):
April 11, 2024

Before: CHAGARES, *Chief Judge*, PORTER and SCIRICA, *Circuit Judges*.

(Opinion filed: September 12, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

PORTER, *Circuit Judge*.

Ryan Pownall, a former Philadelphia police officer, filed a civil rights action against the Philadelphia District Attorney and an Assistant District Attorney (the "DAO"). The DAO invoked prosecutorial immunity, and the District Court granted its motion to dismiss. We will affirm.

I

On June 8, 2017, Pownall was on patrol and noticed David Jones "illegally operating and recklessly driving a dirt bike." App. 4. Pownall exited his police car and approached Jones, whose bike had stalled. A struggle ensued. Pownall grabbed Jones and felt the outline of a gun tucked into Jones's waistband. Jones broke free from Pownall, who then drew his firearm and ordered Jones to stop resisting. Jones refused to comply. Pownall attempted to fire his gun at Jones, but the weapon misfired. Pownall moved to clear the misfired round and momentarily lost sight of Jones and Jones's gun. Jones dropped or threw away the gun, and started to flee; Pownall, not realizing that Jones no longer had a gun, shot Jones. Terrance Freeman, who was riding in the back seat of Pownall's police vehicle, witnessed the shooting. Jones was taken to the hospital, where he was pronounced dead. The police recovered a stolen firearm and multiple live rounds from the ground near the site of the altercation.

The DAO opened an investigation into the shooting, but due to a conflict of interest the matter was transferred to the Pennsylvania Attorney General's office. The Attorney General investigated but never charged Pownall. But Philadelphia's new

District Attorney, Lawrence Krasner, requested that the Pownall matter be transferred back to the DAO. Krasner assigned the case to Assistant District Attorney Tracy Tripp.

The DAO retained an expert, Gregory A. Warren, Ed.D., to investigate and prepare a report on whether Pownall's use of force was justified. Warren's analysis relied in part on witness statements, including Freeman's account to detectives after the shooting.[1] Warren found that Pownall's decision to shoot Jones hinged on Pownall temporarily losing visual contact with Jones while clearing the misfired round. Pownall believed that Jones still possessed his handgun and remained a threat. Applying 18 Pa.C.S.A. § 508(a), which establishes the circumstances under which deadly force used during an arrest is not a crime, Warren concluded that Pownall's use of force was justified, and that Jones's own actions had caused the shooting.

---

[1] Pownall's Complaint alleges that "Expert Warren reviewed Witness 3's [i.e., Freeman's] statement to detectives and relied upon it to conclude that Pownall's shooting was justified." App. 404. Dr. Warren's report appears to corroborate this. Under a heading that lists "[a]dditional circumstances and observations involving this incident as derived from the study of all of the included documents involving this case are as follows:" (App. 206), the report states, "Officer Pownall's passenger, Mr. Freeman, who had witnessed a great deal of the unfolding events from the left rear passenger seat of the marked patrol vehicle . . . with his window partially down *states to officers* that the gun is on the ground several feet away from where the original struggle had ensued." App. 208 (emphasis added). Also, the cover page of the report notes that the documents reviewed to compile the report included "multiple witness statements." App. 94. Even if the report does not explicitly confirm its reliance on Freeman's statement, at the motion to dismiss stage, we must "accept as true all allegations in the complaint" and draw all reasonable inferences from them "in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).

Pownall argues that Krasner, motivated by a political agenda, then moved to present the case to a grand jury proceeding and prosecute Pownall despite Dr. Warren's report—which the DAO withheld until ordered by a judge to produce it. Pownall argues that Krasner exercised supervision over the grand jury proceeding, and that he directed Tripp and other employees regarding which witnesses to subpoena, what testimony to elicit from each witness, and what legal instructions to provide to the grand jury. Pownall further alleges that Krasner and Tripp "acted in concert to obtain false and/or contradictory witness statements before the . . . grand jury," pursuing charges against him despite knowing from Dr. Warren's report that there was no probable cause. App. 150; *see also* App. 6. Pownall specifically draws attention to an apparent testimonial inconsistency. On one hand, Dr. Warren found that Pownall had not seen Jones drop his gun. However, on the other hand, the presentment states, seemingly based on Freeman's grand jury testimony, "Given Pownall indicated to Witness 3 [i.e., Freeman] that he saw Jones throw the gun . . . there is no indication how Pownall could have reasonably believed Jones was still armed or dangerous." App. 366. The presentment then concluded, "If, as Pownall later stated, he knew that Jones threw the gun away, there was no reason or necessity for Pownall to shoot Jones[.]" *Id.*[2] The DAO declined to present to

---

[2] We note inconsistencies and a possible typographical error—material to Pownall's allegations—within the presentment. First, according to the presentment, Freeman told "Witness 1," a police officer at the scene, that he saw Jones draw a firearm on Pownall. But Freeman later testified to the grand jury that he never saw Jones's firearm until after the shooting. App. 362. Second, the presentment states that Pownall told *Witness 1* that Jones "threw something," (*Id.*) but it concludes that Pownall "indicated to *Witness 3* that he saw Jones throw the gun." App. 366 (emphasis added).

the grand jury the statutory definitions of the crimes with which they sought to charge Pownall. The DAO also did not present the peace officer justification defense under 18 Pa.C.S.A. § 508(a). The grand jury recommended homicide charges against Pownall, and the DAO charged him with the murder of Jones.

After Pownall was charged, the DAO successfully moved to bypass a preliminary hearing. As noted by the trial court, a preliminary hearing serves in part as a mechanism to cure prejudice that may have occurred during grand jury proceedings. The trial court concluded that the DAO achieved this bypass by misstating the law.[3] The DAO also moved to unseal and publicize the grand jury's presentment of its factual findings and recommendation of charges, allegedly planning for media coverage to support Krasner's political agenda.

Pownall's trial was scheduled for early January 2020. In late November 2019, the DAO filed a motion in limine seeking to bar the use of a standard jury instruction for the peace officer justification defense, arguing that the statute, 18 Pa.C.S.A. § 508(a), violates the Fourth Amendment of the Constitution. In December 2019, Pownall filed a motion to quash the presentment. Declining to respond to the motion to quash, the DAO "demand[ed]" that the trial court rule on the DAO's in limine motion, "warn[ing]" the trial court that it would pursue interlocutory appeal of any order denying the motion.

---

[3] The trial court concluded that the DAO had been "disingenuous when asserting that it had good cause to bypass the preliminary hearing, and . . . demonstrated a lack of candor in its hearing on the bypass motion by misstating the law and providing the presiding judge with incorrect case law." App. 9; 178.

App. 7–8. The court denied the DAO's motion, the DAO appealed, and the Pennsylvania Supreme Court denied the DAO's appeal.

The trial court then issued a Statement of Findings of Fact and Conclusions of Law granting Pownall's motion to quash the grand jury's presentment and concluding that his due process rights had been violated. The court held that the DAO (1) "failed to provide the Grand Jury with the statutes for First-Degree murder, Third-Degree murder, Voluntary Manslaughter, and Involuntary Manslaughter"; (2) "failed to fulfill prosecutorial duties by deciding not to advise the Grand Jury about the justification defense under Section 508"; and (3) had been "disingenuous when asserting that it had good cause to bypass the preliminary hearing, and . . . demonstrated a lack of candor in its hearing on the bypass motion by misstating the law and providing the presiding judge with incorrect case law." App. 9.

Pownall filed suit in the United States District Court for the Eastern District of Pennsylvania against the City of Philadelphia and the DAO, seeking damages under 42 U.S.C. § 1983 (Counts I and II) on due process and equal protection grounds, and under Pennsylvania state law (Count III). In Count I, Pownall alleged that the City and members of the DAO (in their individual capacities) willfully and deliberately violated his Fourth and Fourteenth Amendment rights by arresting and prosecuting him without probable cause. In Count II, Pownall alleged that the City and DAO members willfully and deliberately maintained practices encouraging wrongful prosecutorial conduct in violation of the First, Fourth, Eighth and Fourteenth Amendments. Finally, in Count III,

Pownall asserted a state law claim for "malicious and outrageous conduct." Answering Br. 7.

The District Court granted the DAO's motion to dismiss Pownall's § 1983 and state law claims with prejudice, holding that the defendants are shielded by absolute prosecutorial immunity. The District Court also held that Pownall failed to plead any plausible basis for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Pownall appealed, raising only the issue of the DAO's entitlement to absolute immunity.

II

We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of absolute immunity. *Kulwicki v. Dawson*, 969 F.2d 1454, 1461–62 (3d Cir. 1992). At the motion to dismiss stage, "the conduct triggering absolute immunity [must] 'clearly appear on the face of the complaint'" and the official seeking immunity bears the burden of showing that the conduct qualifies for immunity. *Weimer v. Cnty. of Fayette, Pennsylvania*, 972 F.3d 177, 187 (3d Cir. 2020). The court must "accept as true all allegations in the complaint" and draw all reasonable inferences from them "in the light most favorable to the non-moving party." *Rocks*, 868 F.2d at 645. However, a court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Buraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal citations and quotation marks

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiff must plead facts sufficient to plausibly suggest an entitlement to relief).

III

Prosecutors are absolutely immune from liability under 42 U.S.C. § 1983 for actions performed as the state's advocate. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). This immunity shields all acts "intimately associated with the judicial phase of the criminal process" but does not extend to "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of prosecution or for judicial proceedings." *Buckley v. Fitzsimmons*, 509 U.S. 259, 270–73 (1993).

To determine whether absolute immunity forecloses a claim against a prosecutor, courts undertake a two-step functional analysis: the court determines "what conduct forms the basis for the plaintiff's cause of action and . . . then determine[s] what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Schneyer v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011); *see also Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). This functional test "separates advocacy from everything else"—legal advocacy is an immune, prosecutorial function. *Fogle v. Sokol*, 957 F.3d 148, 159–160 (3d Cir. 2020). Such protected advocacy functions include "initiating a prosecution and [] presenting the State's case." *Imbler*, 424 U.S. at 431.

"[P]rosecutorial immunity analysis focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions." *Odd*, 538 F.3d at 210; *see also Yarris v. Cnty of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006); *Kulwicki*, 969 F.2d at

8

1463. Accordingly, "our case law has cautioned that determining whether a prosecutor is entitled to absolute immunity requires a fact-intensive inquiry that generally cannot be reduced to bright line rules." *Roberts v. Lau*, 90 F.4th 618, 627 (3d Cir. 2024); *see also Odd*, 538 F.3d at 210 ("We have rejected bright-line rules that would treat the timing of the prosecutor's action (e.g., pre-or post[-] indictment) or its location (i.e. in-or out-of-court), as dispositive."). "Parsing precedent in the fact-specific context of absolute immunity is notoriously tricky and turns not on black-letter rules, but on a 'meticulous analysis' of the Prosecutors' actions." *Fogle*, 957 F.3d at 156 (quoting *Light v. Haws*, 472 F.3d 74, 79 (3d Cir. 2007)).

A prosecutor's grand jury preparations and decisions to prosecute constitute advocacy are covered by absolute immunity. *See Burns v. Reed*, 500 U.S. 478, 490 n.6 (1991) ("There is widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries."); *Imbler*, 424 U.S. at 431 n.33; *Rose v. Bartle*, 871 F.2d 331, 344 (3d Cir. 1989) ("The plaintiffs' allegations involve direct solicitations of testimony for use in the grand jury proceedings. Such solicitations are encompassed within 'the preparation necessary to present a case' and therefore are immunized as involving the prosecutors' advocacy functions.").

Prosecutorial immunity for grand jury-related conduct even covers allegations of "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings." *Kulwicki*, 969 F.2d at 1465. It also covers allegedly "instituting grand jury proceedings without investigation and without a good faith belief that any wrongdoing

9

had occurred," "influencing and directing the grand jury to present false findings," and "intentionally failing to call witnesses with knowledge of the events [that the prosecutors] believed would exculpate" the defendant. *Rose*, 871 F.2d at 347 n.12. (3d Cir. 1989).

However, there are also instances in which a prosecutor's actions during grand jury proceedings constitute an "investigative" function and may fall outside of "advocacy." *See Fogle*, 957 F.3d at 163 (quoting *B.S. v. Somerset Cnty.*, 704 F.3d 250, 270 (3d Cir. 2013).

In *Kulwicki*, we observed that "[c]ertain pre-filing interactions with the police are 'investigative,' such as directing evidence gathering, or giving probable cause advice." 969 F.2d at 1564. This may also include "situations in which the allegations establish that the solicitation or coercion of false statements from a witness occurred while the prosecutor was acting in an investigative capacity." *Id.* at 1465 (quoting *Rose*, 871 F.2d at 344).

To overcome immunity for a prosecutor's conduct coinciding with grand jury proceedings, a plaintiff must allege, in detail, that a prosecutor acted in an investigative capacity. Two recent cases, *Fogle v. Sokol* and *Roberts v. Lau*, illustrate the level of detail required. "In both cases, a hole developed in the prosecution's case post-charge after a witness refused to testify or lost credibility." *Roberts*, 90 F.4th at 628; *accord Fogle*, 957 F.3d at 154. In *Fogle*, the plaintiff alleged in detail that prosecutors had been advising the police on their investigation and had been interviewing witnesses to search for clues in the case rather than preparing for trial. *Fogle*, 957 F.3d at 161–64. Based on the plaintiff's "careful dissection of the prosecutor[s'] actions," we held that the prosecutors

10

were functioning not as advocates, but rather as "investigators seeking to generate evidence in support of a prosecution." *Id.* at 161, 164 (quoting *Odd*, 538 F.3d at 202, 210). Similarly, the plaintiff in *Roberts* "provided detailed allegations describing the actions that [the prosecutor] took to find a new jailhouse informant and coerce him to provide false testimony." *Roberts*, 90 F.4th at 628. We also suggested that a "vague[]" allegation of investigative conduct that "did not describe in detail when or how the prosecutor obtained a false statement from a jailhouse informant" would be insufficient to overcome immunity. *Id.* (quoting *Yarris* at 465 F.3d at 139) (cleaned up).

The District Court in this case divided Pownall's allegations into two categories: pre- and post-presentment prosecutorial conduct. In the latter instance, the allegations involved prosecutorial litigation decisions, such as the DAO's initially successful bypass of a preliminary hearing. Such conduct falls within the scope of absolute immunity because these were actions "intimately associated with the judicial phase of the criminal process," and "require[d] legal knowledge and the exercise of related discretion." *Imbler*, 424 U.S. at 430.

The former category of Pownall's allegations—concerning the DAO defendants' conduct earlier in the case—is a closer question, but Pownall comes up short. As noted above, prosecutorial grand jury advocacy is broadly immune, but such immunity does not overcome detailed allegations of investigative actions overlapping grand jury proceedings, e.g., seeking out another witness to plug a hole in a case. *See Roberts*, 90 F.4th at 628; *see also Fogle*, 957 F.3d at 154.

Pownall alleged in his complaint that "Defendants Krasner and Tripp acted in

11

concert to *obtain* false and/or contradictory witness statements before the investigating grand jury." App. 150 (emphasis added). He further alleged that "Defendant Krasner knew about, directed, and/or encouraged this outrageous conduct to build a case that otherwise lacked probable cause." App. 150. On appeal, Pownall argues that the District Court blurred the line between the DAO (a) advancing a different legal theory and (b) taking coercive actions to alter witness accounts of the shooting. Pownall urges that the latter constitutes investigation rather than advocacy.

Pownall emphasizes his allegation that the prosecution "obtain[ed]" false or contradictory witness statements. *See* Opening Br. 35, 41. Dr. Warren apparently reviewed Freeman's statement to detectives and concluded that the shooting was justified because Pownall had thought that Jones was still armed. But barring a typographical error, the presentment suggests that Freeman testified[4] that Pownall had seen Jones throw away his gun. Pownall alleges that the DAO "pressured Freeman to change his account." Opening Br. 15. He argues that Freeman's grand jury testimony provided the factual basis of the presentment's conclusion that "there is no indication of how Pownall could have reasonably believed Jones was still armed or dangerous." *See* Opening Br. 37 n.11; App. 366.

While Pownall observes an apparent misalignment between Dr. Warren's report (and its reliance on Freeman's eyewitness account to detectives), and Freeman's grand jury testimony (again, barring a typographical error in the presentment), Pownall's

---

[4] *See* note 4, *supra*. The presentment may have erroneously attributed this statement to "Witness 3" (Freeman), rather than to "Witness 1." *See* App. 362, 366.

12

*complaint* does not allege in any detail that the DAO pressured Freeman to change his story. Only a detailed allegation of investigative prosecutorial conduct can overcome immunity. *Roberts*, 90 F.4th at 628; *see also Yarris* at 465 F.3d at 139; *Rose*, 871 F.2d at 344. Also, allegations of "soliciting false testimony from witnesses in grand jury proceedings" or "influencing and directing the grand jury to present false findings" fall generally under "advocacy." *Kulwicki*, 969 F.2d at 1465; *Rose*, 871 F.2d at 347 n.12. Pownall did not allege investigative prosecutorial conduct, and even if he had done so generally, his allegations are insufficiently detailed to overcome immunity.

\* \* \*

For the reasons explained above, we will affirm the District Court's dismissal of Pownall's complaint.